666 F.2d 1168
 7 Media L. Rep. 2353
 In re Applications of KANSAS CITY STAR; American
Broadcasting Companies; Columbia Broadcasting Systems.
Appeal of Allen DORFMAN and Roy L. Williams.
In re Application of KANSAS CITY STAR; American Broadcasting
Companies; Columbia Broadcasting Systems.
Appeal of Nick CIVELLA.
 Nos. 81-1744, 81-1765.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 12, 1981.
Decided Dec. 14, 1981.
 
 Lionel Kestenbaum, Angus Macbeth, Ronald W. Kleinman, argued, Bergson, Borkland, Margolis & Adler, Washington, D. C., for American Broadcasting Companies, Inc.; Thomas M. Bradshaw, Hoskins, King, McGannon, Hahn & Hurwitz, Kansas City, Mo., of counsel.
 Robert S. Whiteside, Kansas City, Mo., for The Kansas City Star Co.
 John T. Martin, argued, Sam L. Colville, Shook, Hardy & Bacon, Kansas City, Mo., for CBS Inc.
 Albert E. Jenner, Jr., argued, Michael J. Rovell, Jeffrey D. Colman, Linda L. Listrom, Robert M. Mendillo, Jenner & Block, Chicago, Ill., for objector- appellant Allen M. Dorfman.
 Thomas A. Wadden, Jr., Washington, D. C., for objector-appellant Roy L. Williams.
 Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.
 ROSS, Circuit Judge.
 This appeal involves the review of an order of the district court,[1] --- F.Supp. ----, which granted public access to various wiretap and electronic surveillance applications, underlying affidavits, exhibits and attachments. We hold that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 (Title III) requires that the documents in question must be maintained under seal and the district court's order granting public access to the records must be vacated.
 
 
 1
 Background.
 
 
 2
 While the facts of this case are quite lengthy, our decision regarding the application of Title III rests heavily on this specific factual setting:
 
 
 3
 On April 20, 1981, the government moved to revoke the bonds pending appeal of Nicholas Civella and Peter Tamburello.[2] The government alleged that Civella and Tamburello had violated the conditions of their release by repeatedly associating with convicted felons and, in addition, alleged that there was a substantial risk that Civella would flee during the pendency of his appeal. The government based the second allegation on a conversation between Civella and George Chiavola which was intercepted under court authorization while Civella was incarcerated on a prior conviction at the United States Penitentiary in Leavenworth, Kansas. The conversation was intercepted on February 4, 1980, and involved a discussion of the possibility of obtaining false identification and travel documents for Civella if he received a long prison sentence on other crimes.
 
 
 4
 In response to the motion of the government, Civella moved to discover all the documents and tapes associated with or related to the electronic surveillance order in question, Misc. No. 80-WT-1, issued by the Honorable Earl E. O'Connor in the United States District Court for the District of Kansas.
 
 
 5
 On May 12, 1981, the government responded to the discovery motion by listing the documents associated with the order issued in Misc. No. 80-WT-1 and stating that it would not oppose Civella's motion to unseal and permit access to those documents still held under seal by the Federal District Court in Kansas. The list of associated documents provided by the government included the applications, affidavits and orders relating to five previous surveillance orders on Civella while he was at Leavenworth. The list also included references to affidavits attached as exhibits to the applications and relied upon in issuing those surveillance orders at Leavenworth. The government response referred to these affidavits not only as exhibits attached to the Leavenworth surveillance applications but also listed other wiretap or electronic surveillance orders to which the affidavits were related. The other surveillance orders were listed as having been authorized on various Teamster Union offices and, among others, on the home and office of Roy L. Williams, who was subsequently elected national president of the Teamster Union.
 
 
 6
 On May 20, 1981, the government filed a motion to unseal the documents in the United States District Court for the District of Kansas. Judge O'Connor ordered that the documents be unsealed, copied and transferred in camera, to Judge Wright in the Western District of Missouri "for further use as deemed appropriate" in the bond revocation proceedings. Judge O'Connor ordered that the original documents then be resealed and also ordered the tapes of intercepted communications "presently filed under seal in this Court * * * be made accessible * * * " to Judge Wright.
 
 
 7
 On May 21, 1981, Judge Wright granted Civella's discovery motion and ordered that Civella and his attorneys be given access to all the documents and be given a copy of the tape recording of the February 4, 1980 intercepted communication. Civella and his attorneys were forbidden from disclosing or disseminating the documents or their contents without the express written order of the court.
 
 
 8
 On May 28, 1981, the Kansas City Star Company filed an application for access to the documents and tape made available to Civella. The application for access was based solely on a common law right to inspect judicial records. The Kansas City Star was candid with the district court as to its reasons for seeking access to the records. The reasons stated in the application were that Roy L. Williams was the interim president of the Teamsters and would probably be elected president on June 1, 1981. Therefore, the news media was interested in information on a relationship between Williams and Nicholas Civella, a reputed organized crime figure. On June 3, 1981, the American Broadcasting Companies, Inc. (ABC) also applied for access to the documents and tape.
 
 
 9
 On June 9, 1981, the attorney for Roy L. Williams sent the district court a letter concerning the news media's application for access. Counsel stated that he was aware of the bond revocation hearing scheduled for June 13, 1981, and was ready to appear at the hearing. Specifically, counsel argued that under Title III, Williams was entitled to ten days notice prior to any use of the interceptions at the hearing (18 U.S.C. § 2518(9)) and should be given the opportunity to inspect the documents. Counsel also argued that Williams was an "aggrieved person" under Title III (18 U.S.C. § 2510(11)) who had the right to move to suppress the contents of any such communication or evidence derived therefrom before its use in court. Counsel stated in regard to the news media's application for access that he was unaware of any provision of Title III which would authorize such disclosure. On June 10, 1981, the attorney for Allen M. Dorfman also wrote the district court regarding the news media's application and essentially alleged that Dorfman had the same rights as Williams and made a request that Dorfman be given access to the documents. Accompanying the letter was a formal pleading on behalf of both Dorfman and Williams which cited their objections to the media's access application. The pleading noted that the documents in question related mainly to Williams but indicated that Dorfman had received court notice that his telephone conversations had also been intercepted pursuant to the same surveillance authorizations. While the appellants reiterated their alleged rights under Title III, they also contended that the publicity caused by release of the documents might jeopardize their chances for a fair trial on criminal charges pending against them in the United States District Court for the Northern District of Illinois.
 
 
 10
 On June 13, 1981, the bond revocation hearing was held. Counsel for appellants Dorfman and Williams and counsel for the media applicants were present at the hearing. At the hearing, the government entered all the documents into evidence because Civella's counsel stated that while he would not challenge the legality of the electronic surveillance at the bond revocation hearing, he would not waive Civella's right to do so at some later time. The following portion of the bond revocation hearing transcript contains the total discussion regarding the documents in question:
 
 
 11
 MRS. JEANS (counsel for the government): At this time, Your Honor, we move into our next area pertinent to this bond revocation matter and that is the matter of an intercepted conversation that occurred at Leavenworth penitentiary on February 4th, 1980.
 
 
 12
 Pertinent to that particular intercept are files, records, including orders, applications and affidavits and their attachments authorizing this series of court-authorized electronic surveillances in the District of Kansas signed by Judge O'Connor. I know that Judge O'Connor has, pursuant to order, transferred many of those files and records to this court where they are reposited under seal for the use of this Court in these further proceedings.
 
 
 13
 At this time, Your Honor, we would ask that the Court first take judicial notice of the electronic surveillance orders, applications, affidavits, pertinent paper work, including all attachments submitted in connection with those electronic surveillances, those being denominated as Miscellaneous No. 79-WT-2, 79-WT-4, 79-WT-5, 79-WT-6, 79-WT-7, and 80-WT-1.[3]
 
 
 14
 Also at this time, Your Honor, because these records and documents are relevant and pertinent to this next matter of evidence, we would offer these at this time into evidence.
 
 
 15
 MR. GOODMAN (counsel for Civella): Your Honor, if it please the Court. The Court has entered an order sealing certain documents. For purposes of these proceedings, I see no reason why that order should not continue.
 
 
 16
 It's our position, Your Honor, that because of the brevity of time given as far as being able to make a challenge on probable cause grounds and the like and have a full-blown litigated hearing concerning the electronic surveillance, that for purposes of this hearing and this hearing alone that challenge will not be made.
 
 
 17
 Our efforts were to approach this situation based on 3504, and we abide by the Court's ruling. I don't want the fact that we're not objecting specifically to in any way waive any of Mr. Civella's rights or Mr. Tamburello's rights if the same are needed at some future proceeding.
 
 
 18
 That's the point.
 
 
 19
 THE COURT. All right. All right.
 
 
 20
 MRS. JEANS: At this time, Your Honor, we'll call our-I suppose there should be some clarification, Your Honor. Have you taken judicial notice of these affidavits, applications and orders?
 
 
 21
 THE COURT: Yes. Are you moving their admission?
 
 
 22
 MRS. JEANS: I am, Your Honor.
 
 
 23
 THE COURT: All right. They will be admitted and I will take judicial notice of them.
 
 
 24
 MRS. JEANS: Thank you.
 
 
 25
 Subsequent to the introduction of the documents, the government played a portion of the tape of the February 4, 1980 conversation between Civella and George Chiavola at Leavenworth. During the bond revocation hearing the court stated to the news media's attorneys that any hearing on their application for access would not be held that day.
 
 
 26
 On July 2, 1981, the district court heard arguments on the media's application for access and appellants' opposition to such access. At the hearing the media applicants specifically limited their access request to the documents introduced into evidence at the bond revocation hearing.
 
 
 27
 On July 15, 1981, the district court granted the media's application for access to the documents but stayed its order pending appeal to this court. The district court found, inter alia, that since he had not resealed the documents after they were transferred in camera from the Kansas Federal District Court, the documents had become part of the public record when introduced into evidence at the bond revocation hearing. As part of the public record, the district court held that the news media had the common law right to inspect and copy the documents. The district court also noted that "the statutory objectives of the sealing requirement have been satisfied, and * * * there would be little purpose served by the continued sealing of the documents pursuant to (18 U.S.C.) section 2518(8)(b)."
 
 
 28
 The district court did agree with appellants' contentions that they, alternatively, had a right to move to suppress the documents under 18 U.S.C. § 2518(10)(a) and found each appellant was an "aggrieved person" under 18 U.S.C. § 2510(11). However, the district court held that appellants had waived such right to move to suppress by failing to make such a motion prior to the bond revocation hearing as required by 18 U.S.C. § 2518(10)(a).[4] The district court rejected the appellants' contention that under 18 U.S.C. § 2518(9) they were entitled to ten days notice prior to the admittance of the documents into evidence at the hearing and were entitled to copies of the surveillance orders and applications. The court found that the requirements of section 2518(9) did not apply to appellants because they were not parties to the bond revocation proceeding. The district court specifically held that the appellants were not entitled to copies of documents until after they filed a suppression motion which they had failed to do.
 
 
 29
 The Sealing Requirements of 18 U.S.C. § 2518(8)(a) and (b).
 
 
 30
 The first dispute which must be addressed is the news media's contention that the documents were not under seal when admitted into evidence and therefore a presumption in favor of public access applies.[5] The appellants' response to this contention is that all the parties involved and the district court itself made statements on the record that reflected a belief that the documents were under seal when admitted into evidence. We agree with the appellants.
 
 
 31
 Comments made by the district court at the July 2 hearing indicated his belief that the documents were admitted into evidence under seal.[6] We also note that there had been no public access to these documents as of the date this case was heard and we have not been advised of any subsequent access.
 
 
 32
 Congress enacted Title III for the dual purpose of "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." S.Rep.No.1097, 90th Cong., 2d Sess., reprinted in (1968) U.S.Code Cong. & Ad.News 2112, 2153.
 
 
 33
 Title III contains specific sealing requirements for both the recording of the contents of the intercepted communication and the order and application authorizing the interception. 18 U.S.C. § 2518(8)(a) and (b) provides:
 
 
 34
 (8)(a) The contents of any wire or oral communication intercepted by any means authorized by this chapter (18 USCS §§ 2510 et seq.) shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter (18 USCS § 2517(1), (2) ) for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom under subsection (3) of section 2517 (18 USCS § 2517(3) ).
 
 
 35
 (b) Applications made and orders granted under this chapter (18 USCS §§ 2510 et seq.) shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.
 
 
 36
 18 U.S.C.S. § 2518(8)(a) and (b) (emphasis added).
 
 
 37
 The district court in ordering the documents and the February 4, 1980 tape be disclosed to Civella stated that good cause was shown. However, the district court did not determine whether there was good cause for disclosing the documents to the public but rather the judge found that the statutory objectives of the sealing requirement of section 2518(8)(b) had been fulfilled. The district court relied upon United States v. Florea, 541 F.2d 568, 575 (6th Cir. 1976), cert. denied, 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977) in finding the purpose of the sealing requirement is "to protect the confidentiality of the government's investigation as well as the authenticity of the application and order." We, however, do not believe preservation of the confidentiality of the government's investigation is the only purpose for the sealing requirement under section 2518(8)(b) and the Florea case does not so hold. Rather, we hold that even in the absence of a government claim to confidentiality there must still be good cause for unsealing and disclosing orders and applications for electronic surveillance because the "protection of privacy was an overriding congressional concern" in the enactment of Title III. Gelbard v. United States, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972).[7]
 
 
 38
 Under section 2518(8)(a) recordings of intercepted conversations are to be sealed and "the purpose of this provision is to insure the integrity of the tapes following the interception." McMillan v. United States, 558 F.2d 877, 878 (8th Cir. 1977). Title III specifies and limits the situations in which a recording may be used or disclosed in 18 U.S.C. § 2517. In contrast, the disclosure of sealed orders and applications for electronic surveillance is limited in section 2518(8)(b) only to a showing of good cause. The Senate report, however, provides some additional guidance on disclosure.
 
 
 39
 Subparagraph (b) provides that applications and orders for authorization shall be treated confidentially. Particularly in renewal situations, they may be expected to contain sensitive information. The provision requires them to be sealed and kept wherever the judge directs, which would normally be with the records themselves. Applications and orders may not be disclosed except incidental to the disclosure or use of the records themselves after a showing of good cause, for example, under (10)(a), discussed below. Applications and orders may not be destroyed except on a court order and must be kept for at least 10 years.
 
 
 40
 S.Rep.No.1097, supra, at 2194 (emphasis added).
 
 
 41
 The Senate noted their concern for confidentiality with no specification that the government's confidentiality was their only concern. Also noted was a concern for "sensitive information" in renewal situations. Although, technically, these interceptions were not "renewals," this is a case where information from one wiretap is used to secure others. More importantly, the Senate report states that orders and applications should not be disclosed "except incidental" to the use or disclosure of the recordings "after a showing of good cause." The Senate provided an example of good cause based on (10)(a) (18 U.S.C. § 2518(10)(a) ). Section 2518(10)(a) is the subparagraph of Title III which provides for the procedure to be followed if an "aggrieved person" moves to suppress the intercepted communication. The Senate report in discussing section 2518(10)(a) indicates:
 
 
 42
 Upon the filing of such a motion to suppress, the court may make available to the person or his counsel such portions of the intercepted communications or evidence derived therefrom as the court determines to be in the interest of justice. This provision explicitly recognizes the propriety of limiting access to intercepted communications or evidence derived therefrom according to the exigencies of the situation. The motion to suppress envisioned by this paragraph should not be turned into a bill of discovery by the defendant in order that he may learn everything in the confidential files of the law enforcement agency. Nor should the privacy of other people be unduly invaded in the process of litigating the propriety of the interception of an aggrieved person's communications.
 
 
 43
 S.Rep.No.1097, supra, at 2195-96 (emphasis added).
 
 
 44
 The disclosure of the documents to Civella and his attorneys was required under 18 U.S.C. § 2518(9) and based on the record it is clear that a motion to suppress the interception was contemplated.[8] We find that the district court's order which barred Civella and his attorneys from disclosure of the materials highly appropriate considering the "privacy of other people" and "the propriety of limiting access * * * according to the exigencies of the situation." S.Rep.No.1097, supra, at 2196.
 
 
 45
 The decisive question then, as we see it, remains as to whether there was good cause to disclose the documents. Good cause to us means that, at least minimally, there must be a need for disclosure. On the facts of this case we are at a loss to identify such a need.
 
 
 46
 When Civella chose not to make a motion to suppress the interception, the only need was for the government to document the fact that the interception was authorized.[9] The government did not need to disclose the contents of documents and, in fact, when the documents were introduced there was no testimony concerning their contents.[10] Rather, the documents were introduced as a package and judicially noticed by the district court. From this we conclude there was not good cause to disclose the documents to the public in this case.
 
 
 47
 It is our view that the good cause requirement of the statute calls for at least some consideration by courts of the privacy of other people which might be affected by disclosure. Until the government has some need to disclose intercepted conversations and the orders and applications under which they were intercepted, Title III would seem to insure that those conversations would not be made public.
 
 
 48
 The specific documents which the media seeks access to are the affidavits which relate to authorized wiretaps on the homes and offices of persons other than Civella and which are attached as exhibits to the applications for wiretaps on Civella. The wiretap applications, orders and recordings of these interceptions on other persons are still under seal and the government, at least as of the date this case was heard, has apparently had no need or basis for disclosing those interceptions. Since the Senate was concerned about unduly invading the privacy of other persons during a suppression hearing,[11] we have very little doubt that the privacy of other persons should be considered when there is neither a suppression hearing nor a need for disclosure of the interceptions.
 
 
 49
 For these reasons, we hold that Title III requires that these documents should be sealed until such time as there is good cause for their disclosure. Disclosure of these documents is not a matter committed to the discretion of the district court, instead it is a matter which statutorily requires a factual finding of good cause. Access to judicial documents is based on "a general right to inspect and copy public records and documents," but "(i)t is uncontested * * * that the right to inspect and copy judicial records is not absolute." Nixon v. Warner Communications, 435 U.S. 589, 597-98, 98 S.Ct. 1306, 1311-12, 55 L.Ed.2d 570 (1978). Title III does not allow these documents to become "public" until there is a factual determination of good cause for their disclosure.[12]
 
 
 50
 The order of the district court is vacated and the case is remanded to the district court for the entry of an order sealing the documents.[13]
 
 
 
 [1]
 The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri
 
 
 [2]
 Nicholas Civella and Peter Tamburello were convicted on July 18, 1980, of conspiracy to bribe a public official and unlawful use of communications facilities in interstate commerce in carrying out the conspiracy. Subsequent to their convictions the district court denied the motion of the government to revoke defendants' bond pending appeal, however, the court placed certain restrictions on defendants' release. On May 13, 1981, this court affirmed the defendants' convictions in United States v. Civella, 648 F.2d 1167 (8th Cir.), cert. denied, --- U.S. ----, 102 S.Ct. ----, 70 L.Ed.2d 330 (1981). On June 13, 1981, the district court revoked Civella's bond following the hearing at issue here. On June 23, 1981, this court denied Civella's motion to stay the issuance of its mandate. On October 8, 1981, this court dismissed as moot Civella's appeal from the bond revocation order because the government advised the court that Civella's sentence would be calculated to begin on June 13, 1981
 
 
 [3]
 For clarification, these numbers refer to the six electronic surveillance authorizations issued by the Federal District Court in Kansas for surveillance of Civella while he was incarcerated at Leavenworth. Attached as exhibits to the government's applications for these authorizations are the affidavits to which the media seeks access. These affidavits related to other electronic surveillance in which Williams and Dorfman were intercepted. The "other" electronic surveillance was performed under orders numbered Misc. No. 79-3-2, Misc. No. WT-79-4-3 and Misc. No. WT-79-4-3A and the orders authorized surveillance at numerous locations, including the home and offices of Williams. Since the "other" orders were issued for addresses in the Kansas City, Missouri area, we assume that the orders were entered by the United States District Court for the Western District of Missouri. The orders, applications and the tapes of the intercepted conversations in Misc. No. 79-3-2, Misc. No. WT-79-4-3 and Misc. No. WT-79-4-3A are apparently still under seal
 
 
 [4]
 We hold that the formal pleading filed by appellants would suffice as a motion to suppress (pleading accompanying June 10, 1981 letter)
 
 
 [5]
 No presumption in favor of public access applies to items entered into evidence under seal. In Re Application of NBC, Inc., 635 F.2d 945, 952, n.4 (2d Cir. 1980)
 
 
 [6]
 THE COURT: Let me ask you about this now. Now, this is a little bit different in that it was admitted under seal, and it was never-it was never unsealed
 THE COURT: It was admitted in camera. I accepted it from the judge over in Kansas in camera, and then the order required that it only be shown to the defendant Civella and Tamburello.
 THE COURT: You know, like you take in the Abscam cases, there wasn't any question but what the evidence that they wanted to use had been offered in the case, and it had been played for the jury and the public, and the public had access to it. But in this case, this evidence was offered under seal and it was never unsealed and the public never had access to it.
 THE COURT: Well, I agree with you a hundred percent. If it would have just been offered and it wasn't under seal, I don't think there is any question, under these cases, and I agree with them a hundred percent, that I don't think-I think that the defendants-or that Williams and Dorfman, that they can still get a fair trial, they can take care of that in voir dire. I don't think that has anything to do with it. But I do have some question about if they were never unsealed whether or not somebody-I think somebody coming in off the street's got just as much right as you all do and your all's right is based on the fact that you can do what the average person coming off the street will not come down and do, and I agree with that, and I think that the public's entitled to know what's going on in their courts and so forth. But I have some real question in my mind about the fact that these things were never unsealed.
 THE COURT: Well, if I sustain your application, then part of the order would be that the affidavits would be unsealed.
 Well, I'm going to take this matter under advisement.
 I do want to read the cases that have been cited by the applicants, and I have read the case that is cited by the Objector Dorfman during the recess.
 If any of the other parties-any of the parties have any cases that they find would throw light on the business about the tapes, the affidavits being introduced under seal, I would appreciate having them.
 At the bond revocation hearing both the attorney for the government and the attorney for Civella stated their belief that the documents were under seal. See portions of the transcript cited earlier in this opinion.
 
 
 [7]
 See also Gelbard v. United States, 408 U.S. 41, 50-51 n.9 and n.10, 92 S.Ct. 2357, 2362-63 n.9 and n.10 (1972)
 
 
 [8]
 Whether Civella should have been given access to all the documents is not at issue here. We only note that the district court specifically made a finding of good cause prior to disclosing the documents to Civella
 
 
 [9]
 In this case, we are not called upon to resolve the difficult question of whether Title III would allow public disclosure of these documents, had Civella moved to suppress the interception and a hearing regarding the legality of the interception had taken place. See United States v. Cianfrani, 573 F.2d 835 (3d Cir. 1978)
 
 
 [10]
 Even if the government had identified some need for disclosure, it would seem appropriate to also consider the fact that appellants are awaiting trial on criminal charges in another district
 
 
 [11]
 See Senate Report No. 1097 (quoted previously), page 2196
 
 
 [12]
 The desire of the news media to give the public the contents of sealed wiretaps and related papers is not enough in itself to justify a finding of good cause under the statute
 
 
 [13]
 Based on our disposition of this case, we do not reach the other issues raised by the parties including:
 (1) Whether appellants were entitled to copies of the documents ten days prior to the bond revocation hearing as provided for in 18 U.S.C. § 2518(9).
 (2) Whether appellants were aggrieved persons entitled to move to suppress the documents under 18 U.S.C. § 2518(10)(a).
 (3) Whether disclosure of the documents would jeopardize appellants' right to a fair trial.