CUBIC CORPORATION, Appellant,

v.

Richard C. CHENEY, Secretary of Defense

and

Kollsman, a Division of Sequa Corporation, Intervenor.

No. 89–5277.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1989.

Decided Sept. 21, 1990.

Mark D. Attorri, with whom N. Richard Janis, William J. Spriggs, and Joseph A. Artabane, Washington, D.C., were on the brief, for appellant.

Sharon A. Cohen, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

John S. Pachter and Arthur I. Leaderman, Vienna, D.C., were on the brief for intervenor.

Before WALD, Chief Judge, EDWARDS, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Cubic Corporation bid for a contract to produce an Air Force instrumentation system, but the Air Force found that Cubic was not a responsible contractor for the project and disqualified it. The Air Force acted on the basis of information suggesting that a senior executive of Cubic, and a defense consultant employed by Cubic, may have attempted to bribe an Air Force official in return for assistance in obtaining the contract. Cubic filed suit in district court to overturn the nonresponsibility determination and to require the Air Force to award it the contract. After rejecting Cubic's claim that it had a right, under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, to challenge the legality of the Air Force's using against it any information derived from wiretaps, the district court granted summary judgment for the Air Force. We reverse on that point and remand the matter for further proceedings.

## I. BACKGROUND

Before a company may be awarded a government contract, a government contract official must make "an affirmative determination" that the contractor is responsible. The contractor bears the burden of persuasion on this point, for the Federal Acquisition Regulation, 48 C.F.R. § 9.103(b), provides that: "In the absence of information clearly indicating that the prospective contractor is responsible, the contracting officer shall make a determination of nonresponsibility." In order to be deemed responsible, a prospective contractor must have, among other things, "a satisfactory record of integrity and business ethics." 48 C.F.R. § 9.104–1(d).

On May 31, 1989, an Air Force contracting officer advised Cubic that it had found that the company was not a responsible contractor with respect to the Alaska/Wisconsin Air Combat Maneuvering Instrumentation (ACMI) procurement, for which Cubic had submitted a proposal. In making that determination, she considered two redacted search warrant affidavits that suggested that a consultant acting on behalf of Cubic, might have bribed Dr. Victor Cohen, then Assistant Secretary of the Air Force for Tactical Warfare Systems, in conjunction with the ACMI project. One of the affidavits states specifically the affiant's belief "that Cohen will provide illegal assistance to Cubic in its effort to win [the ACMI] contract."

The Air Force contracting officer found:

There is substantial evidence of improper activity on the part of the President of [Cubic's subsidiary,] Cubic Defense Systems, Mr. Wellborn, who would have ultimate oversight and responsibility for Cubic's performance of the Alaska ACMI procurement [predecessor of the Alaska/Wisconsin ACMI procurement], and Cubic Corporation. They are both "targets" of the ongoing "Ill Wind" investigation and the affidavits used in support of search warrants at Cohen's home and Wellborn's office indicate that the Alaska ACMI procurement may have been tainted.

Cubic filed suit on June 2, 1989. It sought a temporary restraining order to prevent the Air Force from awarding the ACMI contract pending a decision on Cubic's motion for a preliminary injunction or on the merits of its challenge to the nonresponsibility determination. The district court held a hearing, at the end of which it took the matter under advisement. While the case was thus pending, Cubic informed the Government that Wellborn was no longer working for the company, and asked that the Air Force reconsider the non-responsibility determination before awarding the contract; the Air Force agreed to do so. During the reconsideration, Cubic also advised the Air Force that it had hired a former Navy Judge Advocate General to oversee its ethics training program.

On June 16, the Air Force reaffirmed its non-responsibility determination. The contracting officer found that Wellborn's departure and the arrival of the former Naval officer were insufficient reasons to change her earlier decision. The Air Force then awarded the contract to intervenor Kollsman, a division of Sequa Corporation.

Cubic promptly filed an amended complaint seeking an injunction restraining Kollsman from performing the contract until the district court could review the Air Force's non-responsibility determination. The district court denied Cubic's motion, and granted summary judgment for the Air Force. The court held that a contractor has no right to challenge an agency's use, in making a non-responsibility determination, of information derived from a wiretap, and that the agency's further use of such information to defend its action on judicial review is not subject to Title III. The court also rejected Cubic's claims that the non-responsibility determination was not rational, and that the Air Force had denied Cubic due process of law.

## II. JURISDICTION

■ On appeal, intervenor Kollsman alone challenges this court's jurisdiction. Kollsman argues that the Federal Courts Improvement Act of 1982 vested the Claims Court with exclusive jurisdiction over pre-award challenges to procurement decisions, and that the district court was therefore without jurisdiction over this cause of action. The 1982 statute provides that "before the contract is awarded, the [Claims C]ourt shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief." 28 U.S.C. § 1491(a)(3).

Of those courts of appeals that have confronted the issue, two have held that jurisdiction over pre-award challenges is exclusive in the Claims Court, *see J.P. Francis & Assocs., Inc. v. United States,* 902 F.2d 740 (9th Cir.1990); *Rex Systems, Inc. v. Holiday,* 814 F.2d 994, 997–98 (4th Cir.1987); two have said as much in dicta, *see F. Alderete General Contractors, Inc. v. United States,* 715 F.2d 1476, 1478 (Fed. Cir.1983); *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 721 n. 4 (2d Cir.1983), and two have found concurrent jurisdiction in the district courts, *see Ulstein Maritime, Ltd. v. United States,* 833 F.2d 1052, 1057–58 (1st Cir.1987) (district courts have

"concurrent power to award injunctive relief in pre-award contract cases"); *Coco Bros. v. Pierce,* 741 F.2d 675, 677–79 (3d Cir.1984) ("a superficial reading of the language in section 1491(a)(3) leads one to a result never intended by Congress"); *see also United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1374–75 (Fed.Cir.1983) (dictum that Senate and House Reports indicate that jurisdiction "is exclusive only of contract boards").

We see no need to come down on either side of this issue today. Section 1491(a)(3) provides for "exclusive jurisdiction" in the Claims Court only "before the contract is awarded." *See John C. Grimberg,* 702 F.2d at 1374–77 (upholding transfer of post-award action to district court). Even if the district court lacks jurisdiction over a pre-award claim, it still has jurisdiction over this case, based as it is upon Cubic's amended complaint, which was filed after the award of the contract to Kollsman.

## III. APPLICABILITY OF TITLE III

■ Section 2515 of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2515, provides:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States ... if the disclosure of that information would be in violation of this chapter.

Title III specifies that an "aggrieved person" "may move to suppress" wiretap evidence in any trial, hearing, or proceeding, on the ground that the communication was "unlawfully intercepted" or intercepted on the basis of an insufficient authorization. 18 U.S.C. § 2518(10)(a). An "aggrieved person" is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11).

The process for making a non-responsibility determination is clearly not a "trial" or a "hearing." The Government argues that neither is it a "proceeding" to which the protections of Title III attach. The legislative history of Title III says only that the latter term "is intended to include all adversary type hearings." S.Rep. No. 1097, 90th Cong., 2d Sess. 105, *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2195. It does not reveal, however, whether the Congress intended "proceeding" to encompass only "adversary type hearings." Cubic argues that because the statute, by its terms, applies to a "trial, hearing, or proceeding," 18 U.S.C. § 2518(10)(a), a "proceeding" must be something other than a hearing, and presumably, therefore, something other than an "adversary type hearing" as well.

The statutory context, however, in which "proceeding" appears in company with "trial" and "hearing," suggests something similarly adversarial—not an *ex parte* administrative determination of the sort here at issue. There is in the same paragraph, moreover, an express reference to the powers of "the judge" before whom the "motion to suppress" is to be made. Of course, someone must determine whether Title III has been violated; but a contracting officer, even if she were plausibly within the scope of the term "judge" in § 2518(10)(a), hardly seems the proper person to decide whether a communication was lawfully intercepted, or whether disclosure "to the aggrieved person or his counsel ... of the intercepted communication or evidence derived therefrom [is] in the interests of justice." *Id.* The more sensible reading is that the statute applies only to an adversarial proceeding, like a trial or other hearing, before a "judge."

As a practical matter, as well, an *ex parte* administrative determination is not a realistic forum in which to raise a Title III claim. The party to which the wiretap information applies would have to be given an opportunity to make something like a "motion to suppress" the information before the agency could consider it, a hearing would have to be convened, and a (presumably administrative law) judge brought in

to preside. Meanwhile, the agency could not make a decision, or at least not a decision adverse to the subject of the wiretap information. All this seems like a most improbable way of doing business, and until the agency actually makes an adverse decision based upon the wiretap information, an unnecessary complication, too. Without clearer congressional direction to that effect, we are reluctant to conclude that Title III was meant to be so disruptive a force in the administrative process. We therefore agree with the district court that Cubic had no statutory right to challenge the use of wiretap evidence in the course of the Air Force's administrative consideration of whether the company is a responsible contractor.

The Air Force and Kollsman assert that, because Cubic did not file a motion to suppress in the district court, it waived its argument that the district court action in this case was a "proceeding" covered by Title III. While Cubic did not file a formal motion in the district court, it did contend from the outset of the litigation that the district court action is a proceeding to which Title III applies, and it specifically asked the court not to consider the wiretap materials in reviewing the Air Force's determination of non-responsibility. Memorandum of Points and Authorities in Support of Plaintiff's Renewed Motion for a Temporary Restraining Order 12, 27–28. Cubic repeated the argument in its pleadings and at the hearing on the cross-motions for summary judgment. *See, e.g.,* Transcript of Hearing on Cross Motions for Summary Judgment 26–27 ("Title III does not permit ... the introduction of [untested wiretap evidence] as part of a record in this proceeding"). As Cubic presented the court and the opposing parties squarely with the suppression issue, and the court ruled specifically on it, we hold that Cubic's actions sufficed as a motion to suppress. *See In re Applications of Kansas City Star,* 666 F.2d 1168, 1173 n. 4 (8th Cir.1981) (pleading stating objections to application for access to documents sufficed as motion to suppress under Title III). *See also Carlton v. H.C. Price Co.,* 640 F.2d 573,

577 (5th Cir.1981); *Smith v. Danyo*, 585 F.2d 83, 86 (3rd Cir.1978).

 Although the remedy for the administrative use of wiretap evidence obtained in violation of Title III is not to be found in the administrative process, it does not follow that such use is wholly beyond the reach of Title III. *Cf. Gelbard v. United States*, 408 U.S. 41, 51, 92 S.Ct. 2357, 2362, 33 L.Ed.2d 179 (1972) (grand jury witness, who refused to answer questions derived from allegedly unlawful wiretap, may invoke "just cause" defense to charge of civil contempt, 28 U.S.C. § 1826(a), because ordering witness to disclose evidence barred by § 2515 would "thwart the congressional objective of protecting individual privacy by excluding such evidence and ... entangle the courts in the illegal acts of Government agents"). If any harm comes from the agency's use of the evidence, then the remedy, as for other defects in the administrative process, is to be had in court. There can be no doubt that a "trial, hearing, or proceeding" in district court, including the proceeding on a complaint in a case brought under the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706, is a "proceeding" subject to Title III.

The Government argues nonetheless that, because Cubic itself filed the lawsuit from which it seeks to exclude wiretap evidence, Cubic's "plight in District Court is self-inflicted and outside the purview of Title III protection." The identity of the plaintiff is irrelevant to the Title III exclusion, however; it applies to "any trial, hearing, or proceeding" before any federal or state government authority. 18 U.S.C. §§ 2515, 2518(10)(a), not just to court cases in which a government agency is the plaintiff. If, in district court, an agency relies upon wiretap evidence in support of its administrative decision, then surely the wiretapped party has a right, under the procedures and criteria of Title III, to challenge the lawfulness of the interception.

In this case, the district court itself accepted the proposition that the hearing it held on the cross-motions for summary judgment was "clearly" a "proceeding within the meaning of Title III." The district court did not plumb the merits of Cubic's motion to suppress, however, on the ground that its review of the non-responsibility determination did not entail its considering the wiretap evidence:

> In reviewing the nonresponsibility determination, the Court is not considering the Cohen affidavit, or any other evidence, to determine Cubic's responsibility to perform the contract at issue. Rather, the Court must review the decision of the Air Force to determine whether it was rational and in accordance with law.

To be sure, the court did not sift the evidence and itself "determine Cubic's responsibility." Neither the Air Force nor the district court, however, suggested that the administrative decision could be upheld without recourse to that evidence. Therefore, the court had to consider the challenged affidavits in order to determine whether the non-responsibility determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The court expressly concluded that "both the Cohen and Wellborn affidavits support [the rationality of the non-responsibility] determination."

The Government echoes the district court when it argues that Title III does not apply because "the wiretap information was not offered into evidence" but rather "the administrative record of the agency action was submitted for review." The Government points out that § 2515, the general limitation on the use of wiretapped communications, states only that such information may not be "received in evidence ... if the disclosure of that evidence would be in violation of [Title III]."

We do not believe that the Congress intended that the right, under § 2518(10)(a), to move, in the course of a "trial, hearing, or other proceeding," to suppress wiretap information would arise only when that information is formally "received in evidence." Certainly that section does not specifically so provide. On the contrary, the Congress granted the right to suppress wiretap information without reference to the procedure by which the forum came to

consider it. *See* S.Rep. No. 1097, 90th Cong., 2d Sess. 106, *reprinted in* 1968 U.S. Code Cong. & Admin.News 2112, 2195 ("the scope of this provision is intended to be comprehensive").

In this case, the Air Force attached wiretap-derived information as an exhibit to its motion for summary judgment. The court received and considered that exhibit in order to determine whether "the evidentiary matter in support of the motion ... estab-lish[ed] the absence of a genuine issue" of material fact. Fed.R.Civ.P. 56(e) advisory committee's note to 1963 amendment. Thus, even if the exhibit was not formally "received in evidence," it was "evidence" put before the court and therefore subject to a motion to suppress under § 2518(10)(a).

Furthermore, in the specific context of a court proceeding, the Congress made ex-press its intent to restrict disclosure of wiretap information regardless of whether the information was to be formally received into evidence. Subsection 2518(9) extends the prohibition of § 2515 from narrowly "receiv[ing] in evidence" to "otherwise disclos[ing]" wiretap information, without first following certain procedures. *See also* 18 U.S.C. § 2511(1)(c) (crime to dis-close information from unauthorized wire-tap). Wiretap information certainly is "otherwise disclosed" in a district court proceeding if the agency invokes it in sup-port of the decision under review.

Finally, a reading that narrows the terms of § 2518(10)(a) to cover only the formal receipt of evidence in court would be incon-sistent with the Supreme Court's admoni-tion that § 2515 "serves not only to protect the privacy of communications, but also to ensure that the courts do not become part-ners to illegal conduct." *Gelbard,* 408 U.S. at 51, 92 S.Ct. at 2362 (footnote omitted). That is exactly what would happen if the district court were to uphold an agency decision that could not be sustained with-out the use of information obtained by means of an unlawful wiretap.

Accordingly, we hold that when a court reviews an administrative decision on a record that allegedly contains unlawfully intercepted wiretap information, a party aggrieved (within the meaning of Title III, not of the APA) may move under § 2518 to suppress it. If the motion is granted, then the court may consider whether the record, purged of the tainted evidence, supports the decision under review. To rule other-wise, to read § 2518 as permitting a chal-lenge to wiretap evidence only when it is about to be formally received in evidence, and thus to allow the Air Force to use the wiretap evidence in a judicial proceeding under the APA, would undercut the Con-gress's purposes in enacting Title III.

Our decision does not preclude the Air Force from considering untested wiretap information in making a non-responsibility determination, without thereby creating a right in anyone to challenge the prove-nance of that information. If the agency's decision is challenged in a subsequent judi-cial proceeding, however, an aggrieved per-son has the same right to move to suppress the information as that person would have if the agency were formally moving the admission of the information in evidence before the court. In other words, if an agency relies upon wiretap evidence in ren-dering a reviewable decision, it must be prepared to defend in court the legality, under Title III, of the wiretap that produc-ed it.

### IV. CONCLUSION

We reverse the judgment of the district court and remand the case in order for that court to allow the Air Force an opportunity to defend its determination without refer-ence to the wiretap information or, if the agency does not do so, to determine wheth-er the information relied upon by the Air Force was obtained in violation of Cubic's rights under Title III.

*So ordered.*