UNITED STATES of America, Plaintiff,

v.

Pasquale MARCY, a/k/a Pat Marcy, and Fred Roti, Defendants.

No. 90 CR 1045.

United States District Court, N.D. Illinois, E.D.

Sept. 6, 1991.

---

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendants Pasquale "Pat" Marcy and Fred Roti have filed a motion to dismiss the indictment and to suppress all wiretap evidence against them. Marcy and Roti submit various theories as to the impropriety of certain wiretap authorizations secured by the government in connection with its investigation underlying this case. Specifically, they argue that the government failed to establish probable cause for "surreptitious electronic surveillance" of Marcy's telephone conversations, that violations of 18 U.S.C. § 666 (1988) may not be prosecuted with wiretap evidence, that the government violated 18 U.S.C. § 2517(5) (1988), and that there was no genuine need for the wiretaps at the Counselor's Row Restaurant ("Counselor's Row") frequented by Marcy and Roti in Chicago.[1] As set forth below, we reject each of these contentions and deny the motion.

## I. ANALYSIS

### A. Probable Cause for Wiretap

Marcy and Roti's first argument is that the government lacked probable cause with respect to Marcy on the very first of its nine applications for electronic surveillance. The November 4, 1988 application and authorization named several persons, including Marcy, as possible targets. Marcy and Roti maintain that the information in the application affidavit concerning Marcy is so "sparse, vague and dated" that it could not establish probable cause to believe that Marcy was engaging in particular criminal conversations over the phone lines listed in the application and authorization. Evidence from the November 4, 1988 surveillance should therefore be suppressed, they contend, and, because the other eight wiretaps were authorized by information from the November 4 wiretap, "all derivative evidence must be suppressed" as well.

Terence Gillespie and Edward Genson, Genson, Steinback & Gillespie, Chicago, Ill., for Pasquale Marcy a/k/a Pat Marcy.

Dan Webb and Steve Molo, Winston & Strawn, Chicago, Ill., for Fred Roti.

Tom Durkin and Michael Shepard, Chicago, Ill., for the Government.

1. We also address a minimization argument raised by Marcy and Roti in their motion.

This first argument is fundamentally flawed. As the government points out, it is immaterial whether or not Marcy is a properly named "interceptee" in the November 4, 1988 application and authorization. The government need not establish probable cause with respect to each and every person named in a wiretap order. *United States v. Martin*, 599 F.2d 880, 884–85 (9th Cir.) (the statute "describes those persons who *must* be named in the application"; "a judge [may] issue an authorization order upon a showing that probable cause exists with respect to *an individual;* it does not expressly require a similar showing with respect to *each person* named in the application") (emphases in original), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1067 (1979); *see also United States v. Dorfman*, 542 F.Supp. 345, 377–78 n. 30 (N.D.Ill.) (adopting holding in *Martin*), *aff'd*, 690 F.2d 1217 (7th Cir.1982). In fact, the government had no obligation to even name Marcy in the application. *United States v. Donovan*, 429 U.S. 413, 435–38, 97 S.Ct. 658, 672–73, 50 L.Ed.2d 652 (1977).

The bottom line, as the government suggests, is that Marcy and Roti do not argue that there was insufficient probable cause for the issuance of the authorization with respect to any of the persons named in the application except Marcy. Thus, with law enforcement personnel "properly authorized to intercept [Person X]'s conversations over [Person X]'s home telephones, ... it is difficult to understand how the agents could not also be authorized to intercept [Person X]'s conversations with Marcy. If such intercepted conversations appear to contain evidence of criminality, the conversations may be properly intercepted whether or not Marcy is named as an interceptee," Response at 9, or whether or not there was probable cause specifically as to him.

In correctly pointing out the permutations of wiretap law not acknowledged by Marcy and Roti, the government does not

abandon the probable cause ship. Indeed, we agree that the November 4, 1988 affidavit, read as a whole, is sufficient to establish probable cause for believing that Marcy was engaging in particular criminal conversations over the phone lines listed in the application and authorization.

Marcy and Roti's remaining contention that the Counselor's Row wiretaps (authorized March 16, 1989, May 16, 1989, and June 19, 1989) lacked probable cause because they were in some way tainted by the "improper" November 4, 1988 wiretap fails because the November 4 wiretap was not, in fact, improper.

### B. Alleged 18 U.S.C. § 666 Violations

 Marcy and Roti next maintain that the government's wiretap evidence cannot be used to prove alleged violations of 18 U.S.C. § 666 because § 666 "is not a crime for which interception is authorized." Memorandum at 5 (citing 18 U.S.C. § 2516(1)(a)-(n) (1988)). The defendants cite *United States v. Millstone Enterprises, Inc.*, 684 F.Supp. 867 (W.D.Pa.), *rev'd on unrelated grounds*, 864 F.2d 21 (3d Cir.1988), in support of their position.

In *Millstone*, a Pennsylvania state court judge authorized wiretaps on a finding of probable cause that a certain person was violating state prostitution and racketeering statutes. *Id.* at 869. That person, facing contempt charges in federal court for failing to respond to a summons, argued that the wiretaps were illegal because "they were approved for the investigation of crimes not within the scope permitted by 18 U.S.C. § 2516(2)." *Id.* at 869–70.[2] That section permits wiretapping for the investigation of

> murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, ... or any conspiracy to commit any of the foregoing offenses.

which interception may be authorized. Section 2516(2) relates to wiretap authorizations brought to state court judges.

---

**2.** Section 2516(1) relates to wiretap authorizations brought to federal judges. Subsections (a)–(n) enumerate the various offenses for

18 U.S.C. § 2516(2); *see also Millstone*, 684 F.Supp. at 870. A federal judge agreed that, because the alleged crimes cited as a basis for the wiretapping authorization were not among the offenses enumerated in § 2516(2), the wiretaps were illegal. *Millstone*, 684 F.Supp. at 870.

That case has only limited applicability here, however. In *Millstone*, the wiretap application did not list any crime other than ones not covered by statute. *Id.* at 869. Here, the government's wiretap application alleged probable cause to believe that certain named persons were violating 18 U.S.C. §§ 1962(c), (d) (1988), crimes enumerated under § 2516(1)(c). That evidence concerning alleged violations of 18 U.S.C. § 666 was also obtained during the course of a lawful wiretap does not mean that such evidence cannot be used to prove the alleged § 666 violations. In fact, as the government points out, not only is this not the type of situation confronting the court in *Millstone*, other federal courts have made it clear that the government may use lawfully obtained wiretap evidence to prove crimes not specified in the wiretap order, and may do so even if those are crimes not specifically targeted by Title III. *See United States v. Pacheco*, 489 F.2d 554, 564 (5th Cir.1974) (discussing § 2516(2) and finding that "[a]dditional offenses discovered during the course of a proper intercept may be prosecuted regardless of the nature of the offense or the prescribed punishment"), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975); *see also United States v. Lanza*, 341 F.Supp. 405, 412–13 (M.D.Fla.1972).

Further, it would be absurd to suppose that the government could not seize evidence allegedly relating to "non-enumerated" criminality merely because it happened to discover such evidence during the course of otherwise lawful electronic surveillance. *See United States v. Williams*, 737 F.2d 594, 605–06 (7th Cir.1984) (rejecting defendants' argument that governmental review of "lawfully recorded conversations for evidence of a charge not alleged in the Title III application" is unconstitutional), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *United States v. Johnson*, 539 F.2d 181, 188 (D.C.Cir.1976) ("Officers attending a properly authorized, limited, and supervised wiretap have no obligation to close their ears to unexpected incriminating information on matters unrelated to their immediate investigation.... Like an officer who sees contraband in plain view from a vantage point where he has a right to be, one properly overhearing unexpected villainy need not ignore such evidence."), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977).

### C. Alleged Violations of 18 U.S.C. § 2517(5)

■ Marcy and Roti also contend that the government violated 18 U.S.C. § 2517(5) (1988) when it charged them with crimes not listed in the wiretap application. They rely heavily on *United States v. Brodson*, 528 F.2d 214 (7th Cir.1975), in arguing that the indictment must be dismissed.

United States District Judge Ilana Rovner recently rejected a similar contention in *United States v. Shields*, No. 90 CR 1044, slip op. at 68–76, 1991 WL 239579 (N.D.Ill. July 30, 1991). We adopt Judge Rovner's analysis without repeating it here, and find that, particularly where the government has brought a superseding indictment after obtaining a § 2517(5) disclosure order, dismissal of the indictment or suppression of certain wiretap evidence is not appropriate.

### D. Counselor's Row Wiretaps

■ The defendants assert that the affidavits submitted in connection with the Counselor's Row wiretap applications "fail[ed] to establish a genuine need for the highly intrusive technique of wiretapping." Memorandum at 13. This is essentially a claim that the government did not make a sufficient showing of necessity pursuant to 18 U.S.C. § 2518(1)(c) (1988). That section requires "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

In this Circuit, however, " 'the government's burden of establishing its compliance with [subsection 2518(1)(c)] is not great.' " *United States v. Anderson*, 542 F.2d 428, 431 (7th Cir.1976) (brackets in original); *see also United States v. Farmer*, 924 F.2d 647, 652 (7th Cir.1991) ("The government's burden of proving 'necessity' [under § 2518(1)(c)] is not high."); *United States v. Zambrana*, 841 F.2d 1320, 1329 (7th Cir.1988) (quoting *United States v. Anderson, supra*). The government's application is satisfactory if it contains a factual predicate for a determination that other, perhaps less intrusive, investigative techniques are not feasible. *Zambrana*, 841 F.2d at 1330.

The legislative history of § 2518(1)(c), discussed in this Circuit's leading cases, is quite pertinent here:

> Subparagraph (c) requires a full and complete statement as to whether or not normal investigative procedures have been tried and have failed or why these are unlikely to succeed if tried, or to be too dangerous. This requirement is patterned after traditional search warrant practice and present English procedure in the issuance of warrants to wiretap by the Home Secretary. [Citation omitted.] The judgment would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. [Citation omitted.] What the provision envisions is that the showing be tested in a practical and common sense fashion.

S.Rep. No. 1097, 90th Cong., 2d Sess. 101 (1968), *cited in Anderson*, 542 F.2d at 431.

■ Employing common sense, and reading the affidavit as a whole, it is clear that electronic surveillance was necessary for three reasons: "normal investigative techniques" had met with only limited success or had failed, the nature of the activities under investigation—namely, the activities of the Chicago organized crime operation known as the La Cosa Nostra—suggested that normal investigative techniques would be unlikely to succeed in the future, and that normal investigative techniques would be too dangerous. Response Exh. 2. We therefore reject Marcy and Roti's suggestion that § 2518(1)(c) necessity has not been shown.

### E. Minimization

■ Finally, Marcy and Roti seem to contend—that is, they raise the issue in their motion but not in their memorandum of law in support of that motion [3]—that the wiretap evidence should be suppressed because the government failed to minimize the interception of communications not subject to interception and, further, failed to record all communications which were monitored and overheard. There can be little doubt that the government followed procedures sufficient to establish a prima facie case of reasonableness. *See United States v. Dorfman*, 542 F.Supp. at 390–91.

Minimization instructions were given by the supervising attorney to the monitoring agents before the Counselor's Row wiretaps were activated. The agents also received a copy of the interception order, the supporting affidavit, and a fairly detailed memorandum outlining the procedures to be followed. *See* Response Exh. 7. An additional memo provided supplementary instructions regarding special issues raised

---

**3.** The defendants' posture relates to the burden of proof on minimization. Initially, as they note, the government has the burden to make a prima facie case of reasonableness; defendants then bear the ultimate burden of persuasion. *United States v. Suquet*, 547 F.Supp. 1034, 1042 n. 19 (N.D.Ill.1982) (citing *United States v. Quintana*, 508 F.2d 867, 875 (7th Cir.1975)). Marcy and Roti suggest that they merely raise the minimization issue and that, "[i]f the government establishes a *prima facie* case of compliance with minimization requirements, then, of course, the defendants will respond and rebut accordingly." Motion at 3. There has been to date no such response or rebuttal subsequent to the government's response, filed August 7, 1991.

by the interception and minimization of oral conversations. *Id.* at Exh. 8.

Additionally, the supervising assistant United States attorney submitted detailed reports to the Chief Judge on the tenth and twentieth days of the interception and attached to those reports copies of the logs maintained by the monitoring agents. *Id.* at Exhs. 9, 10. The monitoring agents updated these logs as calls were intercepted, and described each call in some detail—the time made, its duration, nature (incoming or outgoing), and a brief summary of the agent's contemporaneous understanding of the substance of the call and identity of the participants. Significantly, the monitoring agents also recorded whether they deemed the particular conversation pertinent, and whether the interception was minimized.

These reports, combined with the internal supervision of the assistant United States attorney, his reports to the Chief Judge, and the Chief Judge's overall supervision of the surveillance are sufficient to establish a prima facie case of the reasonableness of the government's minimization efforts.

## II. CONCLUSION

We deny Marcy and Roti's motion to dismiss the indictment and suppress all wiretap evidence against them. First, defendants' probable cause argument relating to the first wiretap application fails as a matter of law. Second, the government may use wiretap evidence to prove alleged violations of 18 U.S.C. § 666, even though that section is not among the enumerated offenses for which electronic surveillance is specifically targeted. Third, we adopt Judge Rovner's analysis of defendants' 18 U.S.C. § 2517(5) argument, and reject that argument as insufficient to merit dismissal of the indictment or suppression of certain evidence. Fourth, we find that there was § 2518(1)(c) "necessity," particularly given the nature of the government's burden in that respect here in the Seventh Circuit. Finally, the government has established prima facie reasonableness regarding its

efforts to minimize the interception of non-pertinent conversations. It is so ordered.