UNITED STATES of America, Plaintiff,

v.

**Mitsuo YOSHIMURA, aka Tsukasa Hosokawa Miyoko Yoshimura, Defendants.**

**Crim. No. 93–00546 HMF.**

United States District Court, D. Hawaii.

Aug. 17, 1993.

Marshall Silverberg, Asst. U.S. Atty., Honolulu, HI, for U.S.

Peter Wolff, Jr., Hart & Wolff, Honolulu, HI, for defendant Mitsuo.

Philip Lowenthal, Lowenthal & August, Wailuku, Maui, HI, for defendant Miyoko.

*ORDER DENYING DEFENDANT'S MOTION FOR ORDER REQUIRING DISCLOSURE OF REDACTED PORTIONS OF GOVERNMENT'S AFFIDAVITS FILED IN SUPPORT OF APPLICATIONS FOR ELECTRONIC SURVEILLANCE*

KURREN, United States Magistrate Judge.

On June 30, 1993, defendant Mitsuo Yoshimura ("Yoshimura") was indicted by a grand jury under a First Superseding Indictment for violation of 21 U.S.C. §§ 841(a)(1), 846, 848, 952(a), 960(a)(1), 963, 18 U.S.C. § 2. On July 8, 1993, Yoshimura filed a Motion for Order Requiring Disclosure of Redacted Portions of Government's Affidavits Filed in Support of Applications for Electronic Surveillance.

Yoshimura protests that in response to his request for discovery, plaintiff United States of America ("Government") moved this court *ex parte* "to unseal *redacted* versions of affi-

davits filed in support" of the Government's applications for electronic surveillance. Yoshimura asserts that the redactions make it impossible for his counsel to effectively use the material to prepare pretrial motions, including motions challenging the legality of the electronic surveillance, and to prepare for trial. The Government opposes the motion and has submitted documents to the court indicating what was redacted for *ex parte, in camera* review. The matter came on for hearing on July 23, 1993. Plaintiff was represented by Assistant U.S. Attorney Marshall Silverberg; defendant Mitsuo Yoshimura was represented by counsel Peter C. Wolff; defendant Miyoko Yoshimura was represented by counsel Philip H. Lowenthal. After hearing the arguments of counsel and reviewing the memorandum and affidavits submitted, the court finds as follows:

*Background*

In January 1990, the Federal Bureau of Investigation ("FBI") initiated an investigation into the alleged criminal activities of Japanese organized crime organizations ("Yakuza") in the District of the Northern Mariana Islands. As part of that investigation, the FBI determined that two telephones in Saipan were being used by the Yakuza to further their activities on Saipan. On December 19, 1993, United States District Judge Alex R. Munson issued an order authorizing the interception of conversations over the two telephones on Saipan after examining a wiretap application by the U.S. Attorney's Office in Saipan, which included an affidavit by Special Agent Derrick Edmond of the FBI. On January 13, 1993, Judge Munson issued a similar order that authorized electronic surveillance on one of the telephones previously authorized, after considering an additional application and affidavit of Special Agent Edmond. At that point in time the FBI investigation focused on subjects who were suspected of committing crimes in Saipan.

The FBI, however, had a cooperating individual in Saipan introduce one of the subjects, Nobuaki Imai, in Saipan to a cooperating individual living in Hawaii and negotiations began to ship drugs from Japan to

Hawaii, instead of to Saipan. According to the Government only some of the targets previously identified in the Saipan wiretap applications were involved in the shipments to Hawaii. During February, 1993, the government claims an agreement was reached between Imai, Keisuki Komine, aka Keisuke Hayashi, and others to sell 300 grams of crystal methamphetamine to the cooperating individual based in Honolulu.

Based on this information, on February 17, 1993, the U.S. Attorney's Office in the District of Hawaii applied for an order authorizing the interception of wire and oral communications of a telephone located in a hotel room in Waikiki, and in the room itself. The application included an affidavit from Special Agent John Ferriera, which incorporated by reference the two previous affidavits of Special Agent Edmond. (Government's memorandum in Opposition, Exhibits 1 and 2). The application was granted and an authorizing order was issued by U.S. District Judge Martin Pence that same day. A second order was also issued by Judge Pence on February 17, 1993, which is not a subject of the current motion.

Between February 17, 1993, and March 30, 1993, the Government asserts Keisuke Hayashi and the cooperating individual discussed another shipment of crystal methamphetamine from Japan to Hawaii. Ultimately, the parties allegedly agreed that Hayashi, along with his boss ("kaicho") would travel to Hawaii with two kilograms of crystal methamphetamine for a price of $300,000. On March 30, 1993, the Government applied for an order authorizing electronic surveillance in two hotel rooms in which Hayashi and his boss were supposed to reside. In support of that application, the Government attached an affidavit of Special Agent John Blake, which incorporated by reference all four of the previous affidavits. Government's Memorandum in Opposition, Exhibits 1–4. After reviewing the application and affidavit Judge Pence issued the authorizing order.

After experiencing technical difficulties in establishing the electronic surveillance on the targeted rooms, the Government applied for an amended order for two other rooms, and attached another affidavit by Special Agent

Blake. There are no redactions on that affidavit. It did incorporate by reference all the earlier affidavits, however. On March 31, 1993, the order was executed. On April 1, 1993, defendants Mitsuo Yoshimura, Keisuke Hayashi, and Yoshihide Ida were arrested. Nobuaki Imai was arrested later.

After the initial indictment was returned on April 7, 1993, the Government received a discovery request from Yoshimura. In response to that request, the Government moved, pursuant to 18 U.S.C. § 2518(9), for permission from the court to release redacted versions of the four affidavits filed in support of the applications for electronic surveillance. The Government claimed that if the portions that had been redacted were released, "then the ongoing investigation in Saipan would be jeopardized and the safety of undercover FBI agents would be threatened." Memorandum in Support of Motion at 4. On April 20, 1993, Judge Pence granted the motion.

## Discussion

The Government asserts that this investigation is part of a larger investigation of Japanese organized crime activity on Saipan and maintains that the part of the investigation discussed above included the identification of other persons who had no known role in the charges pending against the defendants. The Government asserts that based on all the debriefings of Keisuke Hayashi, Nobuaki Imai and Yoshihide, none of them indicated that any of the persons redacted from the affidavits played a role in the drug shipments charged in the First Superseding Indictment. In addition, the Government believes that in the future the persons whose identities and activities were redacted from the affidavits will continue to use the redacted telephone number. The Government contends that if the redacted portions of the affidavits were released publicly, thereby disclosing the telephone number in question, or where it is located, or the persons who are suspected of using the telephone number to conduct illegal activities, then these additional suspects would be warned, the undercover investigation might have to be terminated, the identities of the FBI undercover agents might be ascertainable and their safety would be threatened if the investigation were to continue, and the possibility of filing charges against the suspects would be reduced significantly.

Yoshimura concedes that the Government has a privilege to withhold from disclosure certain confidential information. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). The scope of the privilege is limited by its underlying purpose and the fundamental requirements of fairness. *Id.*, 353 U.S. at 59–60, 77 S.Ct. at 627–628. However, where the disclosure of such information to defense counsel "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," then confidentiality "must give way." *Id.*, 353 U.S. at 60–61, 77 S.Ct. at 628.

The Government asserts that Yoshimura's defense will not suffer any prejudice by the redactions. The Government claims that each of the redactions concerns either: (1) the identity of the FBI undercover agent; (2) the telephone number and location of the targeted telephone on Saipan; or (3) identities of the targets of the electronic surveillance who have not been indicted in this case and who have absolutely no connections with the charges facing the defendants. In addition, the Government contends that the Edmond affidavits were incorporated by the Ferreira and Blake affidavits to provide background material and were not the primary source of the probable cause for the wiretaps at issue here. Finally the Government states that it is prepared to defend the probable cause for the electronic surveillance orders without reliance upon any of the redacted excerpts and does not intend to use any of the conversations overheard pursuant to the two Saipan wiretap orders in this case. The Government has provided the court with the non redacted versions of the affidavits so that the court may review the material for *Brady* or any other information that might be helpful to the defense.

*The Federal Wiretap Law and Constitutional Considerations:*

In 1968, Congress passed the Omnibus Crime Control and Safe Streets Act. Title III of the Act covered wiretapping and electronic surveillance. Title III had two goals: "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." S.Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Adm.News 2112, 2153.

18 U.S.C. § 2515 et seq. sets out the requirements that must be fulfilled in order to issue a court authorized wiretap order. § 2518(1)(b) provides that

> a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

The degree of particularity required by § 2518(1)(b) is imposed not for purposes of fulfilling probable cause requirements or protecting the due process rights of suspects, but of protecting the privacy expectations of citizens. *U.S. v. Marcy,* 777 F.Supp. 1400 (N.D.Ill.1991) citing *United States v. Martin,* 599 F.2d 880, 884–85 (9th Cir.1979) (Government did not need to establish probable cause with respect to each and every person named in wiretap order and had no obligation to even name defendant who was listed as possible target); *U.S. v. Gambino,* 734 F.Supp. 1084 (S.D.N.Y.1990)

(Quantum of probable cause needed for electronic surveillance authorization order to issue is identical to that for standard search warrant).[1] Probable cause is not enough to get a warrant for a wiretap; the application must show that ordinary investigative techniques are unlikely to suffice and must disclose details about all persons expected to be overheard. *United States v. Danovaro,* 877 F.2d 583, 587 (7th Cir.1989), citing *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974) and *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977).

The major purpose of the wiretap legislation was to combat organized crime. 1968 U.S.Code & Adm.News at 2157. However, when Congress passed the legislation, it was also deeply concerned that certain safeguards be added to protect citizens from violations of their right of privacy from unreasonable search and seizure under the Fourth and Fourteenth Amendments. *Id.* at 2153, 2161. Therefore Congress required that applications made and orders granted under this statute must be sealed by a judge and "may not be disclosed except incidental to the disclosure or use of the records themselves after a showing of good cause, for example, under (10)(a).…" *Id.* at 2194.

§ 2518(8)(b) provides that

> [a]pplications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

"Good cause … means that, at least minimally, there must be a need for disclosure." *Applications of Kansas City Star,* 666 F.2d 1168, 1176 (8th Cir.1981). Congress mandated the sealing requirement because it recognized that applications and orders for authorization "may be expected to contain sensi-

---

**1.** A probable cause determination requires evaluation of whether the facts and circumstances established by affidavits in support of wiretap application warrant prudent person in believing that statements concerning described offenses would be communicated over relevant telephone lines. *United States v. Shakur,* 560 F.Supp. 318, 334 (S.D.N.Y.1983).

tive information." *Id.* at 1175, quoting S.Rep. No. 1097, in 1968 U.S.Code & Admin.News at 2194. "The privacy rights of third parties who may be affected by disclosure must also be considered upon an application to unseal pursuant to 18 U.S.C. § 2518(8)(b)." *United States v. Ferle,* 563 F.Supp. 252, 254 (D. Rhode Island 1983) citing *United States v. Dorfman,* 690 F.2d 1217, 1228 n. 15 (7th Cir.1982). The *Ferle* court noted that "[a]ll citizens ... are entitled to the protection of a grand jury proceeding." *Id.*

The sealing requirements of this section were also established to protect the confidentiality of the Government's investigation as well as the authenticity of the wiretap application and order. *United States v. Florea,* 541 F.2d 568, (6th Cir.1976), cert. den. 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1976). The *Florea* court noted that the wiretap statute does not require submission of affidavits in support of a wiretap application and inferred that the disclosure provisions were only applicable to the application itself. *Id.* at 575–576.

In cases where a demand for public disclosure of a wiretap application has been made pursuant to the First Amendment, courts have balanced the competing constitutional and statutory interests. *See Certain Interested Individuals, John Does I–V, who are Employees of McDonnell Douglas Corp. v. Pulitzer Pub. Co.,* 895 F.2d 460 (8th Cir.1990) cert. den. 498 U.S. 880, 111 S.Ct. 214, 112 L.Ed.2d 173 (1990) (Redaction or sealing of intercepted conversations in order to protect privacy interests is permissible if district judge finds that important privacy interests cannot otherwise be protected and those interests outweigh public's interest in access; procedural posture of government's criminal investigation must be considered in balancing process); *Kansas City Star,* 666 F.2d at 1176, citing *Gelbard v. United States,* 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972) (The purpose of specific sealing requirements for both recording the contents of intercepted communication and the order and application authorizing interception was enacted for dual purpose of protecting privacy of wire and oral communications and delineating on uniform basis circumstances and

conditions under which interception of wire and oral communications may be authorized).

Yoshimura has made his demand for disclosure pursuant to § 2518(9). § 2518(9) provides· that

[t]he contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved.

■ While § 2518(9) .mandates that the application, the order and the contents of intercepted communications shall not be received in evidence unless defendant has previously been provided with a copy of the material, a request for those documents under § 2518(9) is still subject to the showing of good cause required by § 2518(8)(b). *Applications of Kansas City Star,* at 1176. In *Kansas City* the court released the application in its entirety, but barred the defendant and his attorney from disclosing the contents to the public, citing Congress' admonition to consider the "privacy of other people" and "the propriety of limiting access ... according to the exigencies of the situation." *Id.* citing S.Rep.· No. 1097, *supra,* U.S.Code Cong. & Admin.News 1968 at 2196. The court concluded that "[d]isclosure of these documents is not a matter committed to the discretion of the district court, instead it is a matter which statutorily requires a factual finding of good cause." *Id.*

Criminal defendants are not the primary group that the provisions of the wiretap statute were designed to protect. "In construing the statute, it should always be remembered that 'although Title III authorizes invasions of individual privacy under individual circumstances, the protection of privacy was an overriding congressional concern.'" *Employees of McDonnell Douglas Corp.,* 895 F.2d at 464, quoting *In re Application of National Broadcasting Co.,* 735 F.2d 51, 53

(2nd Cir.1984). Congress' purpose was to strike a balance between privacy and law enforcement goals. There is no indication in the legislative record that when Congress passed the Omnibus Crime Control and Safe Streets Act, it intended to extend any greater protection to criminal defendants than that already guaranteed by the due process clause.

However, the court recognizes that protecting a citizen's right of privacy was one of the primary goals of the wiretap legislation does not resolve the disclosure dilemma. "Obviously, a statute cannot override a constitutional right." *In re New York Times Co.*, 828 F.2d 110, 115 (2nd Cir.1987), (New York Times I), cert. den., 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988). In addition "[s]tatutes requiring disclosure, but silent on the question of privilege, do not override customary privileges. *Danovaro*, at 588, citing *Upjohn v. United States*, 449 U.S. 383, 397–98, 101 S.Ct. 677, 686–87, 66 L.Ed.2d 584 (1981). In the present case, at least two important constitutional rights conflict: the Fourth Amendment right to privacy and protection from unreasonable search and seizure and the Fourteenth Amendment right to due process.

In criminal cases discovery is limited to that required by the due process clause of the Constitution, which requires that the Government make available evidence that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is "material" only if its suppression might affect the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 87 L.Ed.2d 481 (1985). When revelation of information not necessary to establish probable cause and not necessary to the defense of the accused would violate the constitutional rights of others or jeopardize the personal safety of confidential informants, that information does not have to be revealed pursuant to § 2518(9). *Danovaro; United States v. Abramson*, 553 F.2d 1164 (8th Cir.1977), cert. den. 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977) (Where identity of confidential informant was not necessary to assure a fair opportunity to defendants to prepare their defense, identity could be withheld). The *Danovaro* court held that the Government may include in their affidavit facts they think would assist the court in deciding whether to authorize the wiretap, then withhold from the defendant information that is both dangerous to the informant and unnecessary to sustain the warrant and thereafter choose to defend the warrant without relying on the redacted information. As long as the redacted information is not entered into evidence due process concerns do not arise.

The legislative history and the language of the wiretap statute itself, considered together with a review of the conflicting constitutional rights at issue in this case compels this court to extend the *Danovaro* holding to the present situation. While § 2518(9) provides that Yoshimura has due process rights to the wiretap applications and orders, the § 2518(8)(b) "good cause" requirement makes it clear that Yoshimura is entitled only to that information that is relevant to his defense and is not protected from disclosure by some other constitutional right or privilege. Even a mandatory statutory provision is still subject to constitutional considerations. The Constitution does not require that information in the intercepted communications, application and court order that are not essential to the preparation of Yoshimura's defense be disclosed. There is also no statutory provision that mandates that affidavits filed in support of the application be released. However, a determination of whether those affidavits may or may not be considered integral to the application itself is not necessary to resolve the dispute in this case.

Courts have held that certain information in the application and order may be redacted after *in camera* review. *See Application of U.S. for an Order Authorizing Interception of Wire and Oral Communications*, 495 F.Supp. 282, 284 (E.D.La.1980) (In proceeding on motion for inspection of application and order authorizing interception of wire and oral communications and inspection of recordings and transcripts of intercepted communications, an *in camera* examination was an appropriate means for resolving conflict between need of movant for evidence

and government's claim that disclosure was not in interests of justice or public security); *United States v. Ferle,* 563 F.Supp. 252, 254 (D.C.R.I.1983) (Privacy rights of third parties who may be affected by disclosure of wiretap applications and orders must also be considered upon an application to unseal the documents pursuant to § 2518(8)(b)); *See also United States v. Brown,* 539 F.2d 467, 470 (5th Cir.1976); *United States v. Buckley,* 586 F.2d 498, 506 (5th Cir.1978).

### Findings

■ The court having reviewed the redacted material and the relevant law now finds as follows. The material redacted is limited to descriptions and activities of FBI undercover agents, the telephone numbers and locations of the targeted telephones on Saipan, and the names and activities of other targets of the electronic surveillance who have not been indicted and who are not connected with the charges facing Yoshimura. Although there are sentences, paragraphs and even pages redacted, the volume redacted is a reflection of the detail required by § 2518(1)(b). For example, entire paragraphs are used to describe the exact locations of the telephones to be taped. The volume is also a reflection of repeated duplicative references and therefore in reality only a small amount of information has been redacted.

Furthermore, the only material relevant to this case is that connected to the electronic surveillance authorized by Judge Pence. The Government maintains that it has no intention of using any of the conversations overheard pursuant to the two wiretap orders procured via the Edmond affidavits, which were incorporated by reference in the Ferreira and Blake affidavits. The Government also asserts that it does not intend to rely upon any of the redacted excerpts in defending probable cause for the electronic surveillance orders. The court, however, has reviewed all of the redacted material for *Brady* and other material that might conceivably help defendant prepare a defense.

After reviewing the material redacted *in camera* the court finds that the information redacted would not have helped the Government establish probable cause for the wiretap authorizations that are related to Yoshimura's case. Furthermore, the Government has stated that it does not intend to rely on the redacted information to defend the existence of probable cause. It also does not appear that any of the information redacted would be material to Yoshimura's defense or helpful in any way to his defense efforts. Finally there is no indication that disclosure or non disclosure of the redacted information would affect the outcome of defendant's trial. More specifically the court finds as follows:

1. Telephone numbers and location of the telephones in Saipan.

Since the Government has indicated that it is prepared to defend probable cause for the electronic surveillance orders without this information and since the court finds that this information is not material to this case and would not assist in any way the preparation of Yoshimura's defense, it is unlikely that Yoshimura's right to due process will be compromised by non disclosure. However, while non disclosure would not compromise Yoshimura's constitutional right to due process, it would very likely compromise the Government's efforts to investigate organized crime, contrary to the express purpose of the wiretap statute. Therefore the court orders that the telephone numbers and location of the telephones remain redacted.

2. Identities and activities of unindicted persons suspected of criminal activity.

With one exception, these persons are all located in Saipan and/or Japan. However, there is no indication that any of the individuals mentioned have any connection to the charges pending against Yoshimura. In addition, none of the individuals whose privacy interests may be compromised by disclosure of wiretap information has been indicted. "Where no indictments have issued against persons allegedly involved in criminal activity, there is a clear suggestion that, whatever their truth, the Government cannot prove these allegations.... All citizens, ... are entitled to the protection of a grand jury proceeding." *Ferle,* 563 F.Supp. at 254. After considering the due process rights of the

unindicted targeted persons and the fact that the Government has stated that it does not intend to use any of the conversations overheard pursuant to the two Saipan wiretap orders or rely on any of the redacted information to defend probable cause, the court hereby orders that this information remain redacted.

3. Information as to the identities and activities of the undercover FBI agents that might lead to their identification.

The government has the privilege of withholding from disclosure certain confidential information to protect law enforcement efforts and the safety of law enforcement agents, subject to due process considerations. *Roviaro, supra.* Since the demonstration by affidavit that an attempt to directly secure evidence by an undercover agent would create substantial risk of serious harm is considered sufficient justification for the issuance of a wiretap authorization, it would make little sense to endanger that same agent by later making information that might lead to his identity public under the misguided notion that § 2518(9) required it. *See U.S. v. Shakur,* 560 F.Supp. 318 (D.C.N.Y.1983), affirmed 758 F.2d 843, cert. den. 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1983).

However, in this case the Government indicated at the hearing that certain redacted information regarding the undercover agents would not compromise them or the Government's investigative efforts. Therefore the court hereby orders that the following sections be unredacted:

*First Edmond Affidavit (Exhibit "1").*

1. Paragraph 15, with the exception that the target's name may continue to be redacted.

2. Paragraph 16, first and second sentences.

3. Paragraph 44(b) second and third sentences.

*Second Edmond Affidavit (Exhibit "2").*

1. Paragraph 20(b) second and third sentences.

*Ferreira Affidavit (Exhibit "3").*

1. Paragraph 22(b) second and third sentences.

*First Blake Affidavit (Exhibit "4").*

1. Paragraph 39(c) second sentence.

### Conclusion

While § 2518(9) provides that Yoshimura has due process rights to the wiretap applications and orders, the § 2518(8)(b) "good cause" requirement makes it clear that Yoshimura is entitled only to that information that is relevant to his defense and is not protected from disclosure by some other constitutional right or privilege. After reviewing the material redacted *in camera* the court finds that the information redacted would not have helped the Government establish probable cause for the wiretap authorizations related to Yoshimura's case. It also does not appear that any of the information redacted would be material to Yoshimura's defense or helpful in any way to his defense efforts. Finally there is no indication that disclosure or non disclosure of the redacted information would affect the outcome of defendant's trial.

Since the Government maintains that it has no intention of using any of the conversations overheard pursuant to the two wiretap orders procured via the Edmond affidavits, which were incorporated by reference in the Ferreira and Blake affidavits and since the Government also asserts that it does not intend to rely upon any of the redacted excerpts in defending probable cause for the electronic surveillance orders, the court finds that the Government may continue to withhold the redacted information regarding the telephone numbers, the location of telephones and the identities of unindicted targeted persons. However, the court hereby orders the Government to release in a non redacted form that information specified above regarding certain references to undercover agents.

IT IS SO ORDERED.