**UNITED STATES of America,**
**Plaintiff,**

v.

**J. Jesus ARREGUIN, et**
**al., Defendants.**

**No. CR S–02–104 LKK.**

United States District Court,
E.D. California.

Aug. 7, 2003.

Carolyn K. Delaney, United States Attorney, Sacramento, CA, for Plaintiff.

Steve Emery Teich, Law Offices of Steve Emery Teich, San Francisco, CA, for Defendants.

## ORDER

KARLTON, Senior District Judge.

Defendants in this federal criminal prosecution move for discovery concerning an affidavit filed in support of a state-authorized wiretap (Orange County wiretap # 02–01) and the investigation reports concerning the subject of that wiretap, Reyna–Madrigal, and the subject of an earlier wiretap, Mora.[1] Because the state wiretap information was used to obtain a further wiretap issued by this court, defendants seek discovery in order to attack those underlying wiretaps. At issue is whether defendants' request may be granted in light of the government's privilege to keep confidential the identity of its informants.

Before discussing the parties' arguments, I briefly set out the statutory scheme of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, under which wiretaps are available. In particular, I focus on the provisions that relate to disclosing or using the contents of, or the underlying application for, a wiretap.

---

**1.** The motion was brought by defendant Jesus Arreguin, and joined by defendants Guillen– Campos, Hurtado Cuervas, Hurtado, Mendoza and Valdez–Santos.

## I.

### TITLE III DISCLOSURE PROVISIONS

Title III prohibits the interception of wire or oral communication "[e]xcept as otherwise specifically provided in this chapter ...." 18 U.S.C. § 2511. It also prohibits the use and disclosure of intercepted communications, with narrow exceptions. *See id.;* 18 U.S.C. §§ 2517, 2518. To protect confidentiality and prevent tampering, applications for wiretaps and the orders thereon must be sealed by the issuing court, and can only be disclosed "upon a showing of good cause before a judge of competent jurisdiction ...." 18 U.S.C. § 2518(8)(b).[2] In specific circumstances, though, and for the benefit of persons against whom wiretaps are directed, Title III mandates the disclosure of applications and orders for wiretaps. Title III also provides for disclosure of intercepted communications and evidence derived therefrom under the circumstances discussed below.

Disclosure of the contents of intercepted communications or evidence derived therefrom may be made between investigative or law enforcement officers who obtained knowledge of the intercepted communications or evidence by authorized means. *See* 18 U.S.C. § 2517(1). Such officers may use these communications or evidence in the proper performance of their duties. *See* 18 U.S.C. § 2517(2).[3]

The contents of intercepted communications or evidence derived therefrom may also be disclosed in court proceedings by a person giving testimony under oath. *See* 18 U.S.C. § 2517(3). Before intercepted communications or evidence derived therefrom may be disclosed in a court proceeding, however, each party to the proceeding must be provided "with a copy of the court order, and accompanying application, under which the interception was authorized or approved." 18 U.S.C. § 2518(9).[4]

---

**2.** A judge of competent jurisdiction is defined as:
>(a) a judge of a United States district court or a United States court of appeals; and
>(b) a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that state to enter orders authorizing interceptions of wire, oral, or electronic communications.

18 U.S.C. § 2510(9).

**3.** While this provision does not specify that "appropriate" uses include the disclosure of intercepted communications to supply probable cause for a search warrant or wiretap, courts have looked to legislative history to establish the propriety of disclosure for such purposes. *See, e.g., Employees of McDonnell Douglas Corp. v. Pulitzer Publishing Co.,* 895 F.2d 460 ·(8th Cir.1990) (Congress "envision[ed] use of the contents of intercepted communications ... to establish probable cause to search") (quoting S.Rep.No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S. Cong. & Admin. News, pp. 2112, 2188); *United States v. Vento,* 533 F.2d 838 (3d Cir. 1976) (since Congress intended intercepted communications to be used in applications for search warrants under § 2517(2), it follows

that the section also authorizes use in applications for additional wiretaps); *Chandler v. United States Army,* 125 F.3d 1296, 1301 n. 2 (9th Cir.1997) (for other purposes, quoting with favor the legislative history of the section, including the statement that officers could use intercepted communications to supply probable cause).

**4.** By reference to parties, this provision appears to contemplate only proceedings with more than one party, as opposed to ex parte applications for search warrants or wiretaps. *Cf. Gelbard v. United States,* 408 U.S. 41, 54, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972) (to the extent that 18 U.S.C. § 3504 was applicable to evidence propounded in grand jury proceedings, a "party aggrieved," under that section could only be a witness, "for there is no other 'party' to a grand jury proceeding"). As already noted, courts have looked to § 2517(2) to authorize disclosure for the purpose of supplying probable cause in ex parte proceedings, *see* note 3, *supra,* and have not required notice to persons aggrieved by the wiretap prior to an order authorizing it.

Where a party who was aggrieved by a wiretap moves to suppress communications or other evidence derived from the wiretap, the judge has discretion to disclose the contents of intercepted communications or evidence derived therefrom to the moving party. 18 U.S.C. § 2518(10)(a).[5]

With these statutory provisions in mind, I turn to the case at hand.

## II.

### DEFENDANTS' MOTION

This motion seeks discovery of the application in support of the Orange County wiretap and also other evidence which, defendants argue, would demonstrate that affidavits in support of state court wiretaps contained material misrepresentations. Because defendants' requests are governed by different law, I discuss them separately.

## A. DISCLOSURE OF THE ORANGE COUNTY WIRETAP APPLICATION

The request for disclosure of the Orange County wiretap application is governed by 18 U.S.C. § 2518(9), which requires disclosure of the application to parties to a proceeding in which evidence derived from a wiretap will be offered. The government seeks to avoid compliance with defendants' request by stating that it will not offer into evidence any of the communications intercepted under the Orange County wiretap. As the government comes very close to acknowledging in its supplemental briefing, however, because the federal wiretap was supported by evidence obtained in the execution of the Orange County wiretap, evidence obtained via the federal wiretap is evidence obtained by virtue of the Orange County wiretap. *See, e.g., United States v. Vento*, 533 F.2d 838, 847 (3d Cir.1976) (noting, with respect to defendant's motion to suppress fruits of a second wiretap, that if original wiretap had been improvidently granted, the government could not have used the fruits of that wiretap to obtain authorization for a second wiretap). Thus, the application and order for the Orange County wiretap should be disclosed to each party to any proceeding in which the government desires to introduce evidence derived therefrom.[6] Indeed, the government has disclosed the application and order to moving defendant, Arreguin, but has redacted much of the affidavit in support of the application. It contends that the redacted information could put an informant in danger and jeopardize an ongoing investigation. The real question before the court relative to the state wiretap, then, is whether Title III, which mandates disclosure of the application, allows the government to redact information.

The government relies on *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), which recognized that the government has a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Id.* at 59, 77 S.Ct. 623. *Roviaro* held that, because "protecting an informant's identity serves important law enforcement objectives, determining whether to reveal an informant's identity

---

5. An aggrieved person is one "who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11).

6. It is noteworthy that the disclosure requirements of 18 U.S.C. § 2518(9) are not limited to parties to the wiretap, as are the notice and disclosure provisions of §§ 2518(8)(d) and 2518(10)(a). Because § 2518(9) requires disclosure to "each party," all defendants would appear to have standing under the statute to request a copy of the application at issue.

to a defendant requires balancing the needs of law enforcement against the individual's interest in having a fair trial." *United States v. Rawlinson*, 487 F.2d 5, 7 (9th Cir.1973) (citing *Roviaro*, 353 U.S. at 60–61, 77 S.Ct. 623). "Where the disclosure of an informer's identity, or the contents of his communications, is relevant and helpful to the defense of an accused," however, "or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 61, 77 S.Ct. 623. The *Roviaro* Court thus noted that in cases where the communications of an informer were relied upon to establish probable cause, "the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication." *Id.* On the other hand, where

the reliability of the informant is established, the government need not disclose the identity of a confidential informant where the sole issue is probable cause. *See United States v. Mehciz*, 437 F.2d 145, 148–49 (9th Cir.1971) (citing *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967)).[7] As I now explain, however, *Roviaro* and its progeny do not establish that the government privilege described there applies where Title III mandates disclosure of the application and order for a wiretap.[8]

Title III was enacted to provide greater protection than that mandated by the Constitution under then-existing precedent. *See Gelbard v. United States*, 408 U.S. 41, 48 n. 7, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).[9] The statutory requirements

7. Defendants argue that under *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), *Roviaro* does not apply where a defendant seeks information in connection with a wiretap. *Alderman* does not extend as far as the defendants contend. *Alderman* concerned a case where the underlying wiretap had already been found to be without probable cause, and where the remaining issue was whether some of the government's evidence was tainted by the unconstitutional wiretap. In order to substantiate his argument that the evidence was tainted, defendant sought transcripts of the intercepted conversations. The Court held that such transcripts had to be disclosed "even though attended by potential danger to the reputation or safety of third parties or to the national security-unless the United States would prefer dismissal of the case to disclosure of the information." *Id.* at 181, 89 S.Ct. 961. The Court made clear that "disclosure will be limited to the transcripts of a defendant's own conversations and of those which took place on his premises." *Id.* at 184, 89 S.Ct. 961. Thus, because *Alderman* concerned conversations to which the defendant was a party or to conversations on defendant's premises, the court thought it highly unlikely that the transcripts would involve information not otherwise within defendant's knowledge. *See id.* at 185, 89 S.Ct. 961 ("it can safely be assumed that much of [the information] he will already

know, and disclosure should involve a minimum hazard to others.") In any event, as I explain in the body of this order, *Alderman*, like *Roviaro*, was decided on constitutional grounds and not under Title III. *See id.* at 175, 89 S.Ct. 961.

8. The government cites to *United States v. King*, 478 F.2d 494 (9th Cir.1973), for the proposition that *Roviaro* applies to the matter at bar. *King*, however, is inapposite. It does not concern the disclosure of an application or order for a wiretap under Title III. Rather, two defendants in that case sought, on constitutional grounds, the identity of an informant to aid in their contention that the wiretap had been issued without probable cause. Clearly, in such circumstances, *Roviaro* and its progeny apply.

9. *Gelbard* observed:

In stating the problem addressed by Congress in Title III, the Senate report .... stressed that Title III would provide the protection for privacy lacking under the prior law: "The need for comprehensive, fair and effective reform setting uniform standards is obvious. New protections for privacy must be enacted. Guidance and supervision must be given to State and Federal law enforcement officers. This can only be accomplished through national legislation."

for wiretap authorization are far more burdensome than those mandated by the Constitution. *See* 18 U.S.C. § 2518 (setting forth requirements for applications and orders for wiretaps); *United States v. Danovaro,* 877 F.2d 583, 587 (7th Cir. 1989) (noting that Title III requires more than probable cause for the issuance of a wiretap). Thus, although *Roviaro* governs where a defendant asserts that due process dictates disclosure, it does not govern where the defendant asserts a right under the disclosure provisions of Title III's more stringent statutory scheme.

In support of its contention that *Roviaro* does apply to requests for the disclosure of wiretap applications, the government cites to two cases which held that information could be redacted from the wiretap application before disclosure. I now examine those cases, and explain why I do not find them persuasive.

The first argument in support of the government's contention is a very tentative one raised in *United States v. Yoshimura,* 831 F.Supp. 799 (D.Haw.1993). The court there asserted that there was "no statutory provision that mandates that affidavits filed in support of the application be released." *Id.* at 805. This observation seems quite strained, putting form over substance. Title III requires that an application must include a broad statement of relevant facts, specifying numerous details. *See* 18 U.S.C. § 2518(1) (applications must include, *inter alia,* a full and complete statement of the facts relied on by the applicant to justify belief that order should be issued, as well as a full and complete statement as to whether other investigative procedures have been tried, and failed). Thus, where an affidavit supplies the information required by the statute to be included in the application, it must be

considered part of the application. To the extent, then, that Title III requires that the application be released, affidavits that are part of the application must also be released.

The second contention, also derived from *Yoshimura,* is that Title III's good cause standard for disclosing sealed applications and orders modifies the provision requiring disclosure of applications and orders. *See id.* According to this reasoning, the court could disclose applications and orders in redacted form if it found that there was no good cause to disclose the redacted information. *See id.* As I now explain, the statute does not support this interpretation.

It is true that § 2518(8)(b) provides that applications and orders for wiretaps should not be unsealed absent a showing of good cause. The statute goes on to anticipate different situations where unsealing would be appropriate. Section 2518(8)(d) requires that notice be given to those whose phones had been tapped. It also provides that the judge who issued the wiretap may disclose to wiretap subjects "such portions of . . . wiretap applications or affidavits as the judge determines to be in the interest of justice." Under this provision, it is apparent that the court is provided discretion in making the decision as to what should be disclosed. By contrast, where the government wishes to introduce evidence derived from a wiretap, § 2518(9) requires that each party to the proceeding must receive a copy of the application and order for a wiretap before the evidence may be received. Notably, § 2518(9) does not include any of the language of discretion found in § 2518(8)(d). Worded as an unqualified requirement, it appears that § 2518(9) represents a judgment by Con-

*Id.* (quoting S.Rep.No. 1097, 9th Cong., 2d Sess., 66 (1968); U.S. Cong. & Admin. News, p. 2156).

gress that the good cause requirement is satisfied where the government plans to use evidence derived from a wiretap.[10] As for *Yoshimura*'s conclusion that, for good cause, portions of applications and orders for wiretaps might nonetheless be redacted, the contention is contradicted by the plain language of the statute. Section § 2518(8)(d) demonstrates that Congress knew how to tell the courts when they could decide to disclose only portions of applications or orders for wiretaps, since it provides that the judge may disclose "such portions" as were "in the interest of justice." *See id.* Section 2518(9) contains no similar allowances, requiring the conclusion that when it mandates furnishing a copy of the application and order for wiretap, § 2518(9) means the whole application and order. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("[W]here Congress includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")

The government's third argument is supplied by the Seventh Circuit in *United States v. Danovaro,* 877 F.2d 583 (7th Cir. 1989). *Danovaro* held that the government could redact the wiretap application and "choose to defend their warrant without relying on the redacted information ...." *Id.* at 588. To reach this conclusion, the Seventh Circuit noted the principle that "[s]tatutes requiring disclosure, but silent on the question of privilege, do not override customary privileges." *Id.* (citing *Upjohn Co. v. United States,* 449 U.S. 383,

397–98, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). While the proposition may well be correct, it does not apply to Title III, since Congress was not silent on the question of privilege in this statute. Indeed, Congress took deliberate action to preserve the privilege where privileged communications were intercepted. *See* 18 U.S.C. § 2517(4) ("No otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character"). As the Supreme Court has noted, "we would not presume to ascribe [differences in a statute] to a simple mistake in draftsmanship." *Russello,* 464 U.S. at 23, 104 S.Ct. 296. In sum, the fact that Congress provided for the privilege relative to intercepted communications but did not preserve the government's privilege to keep its informants confidential, requires precisely the opposite of the conclusion reached by *Danovaro;* the natural implication is that Congress did not intend for the government privilege to apply.

Because the plain language of Title III does not provide for disclosure of redacted applications and orders under § 2518(9), and given the legislative purpose of providing more stringent requirements under Title III than those found by the courts in the Constitution, I must conclude that the government is required to disclose wiretap applications and orders in their entirety before it may use evidence derived from such wiretaps.[11] As another district court has observed:

I recognize that where the wiretap application and order contain sensitive in-

---

10. The purpose of § 2518(9) supports this conclusion, as it was "'designed to give the party an opportunity to make a pre-trial motion to suppress.'" *United States v. Manuszak,* 438 F.Supp. 613, 621 (E.D.Pa.1977) (quoting S.Rep.No. 1097, 9th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin. News, pp. 2194–95).

11. Because the government is in possession of the application and order in their unredacted forms, this court need not deal with the knotty problem of whether it may order the state court to unseal the application and order.

formation the disclosure of which could prejudice an ongoing investigation, the government may be put to a hard choice of either foregoing its proceeding against the defendant or risking the frustration of its investigation. But this is a choice which Congress has in plain language decreed the government must make when it seeks to deprive a person of his liberty on the basis of wiretap evidence. In truth it is not much different than a number of other difficult decisions which the government must make in pursuing a criminal prosecution, such as when it must decide whether to proceed with a case that will require revelation of the identity of an informer.

*United States v. Manuszak,* 438 F.Supp. 613, 625 (E.D.Pa.1977).

## B. DISCLOSURE OF EVIDENCE RELATING TO THE APPLICATIONS FOR STATE–AUTHORIZED WIRETAPS

Defendants plan to argue that the applications for the state court wiretaps are not only facially deficient under Title III, but also contain material misrepresentations. Specifically, defendants wish to argue that the government misrepresented to the state court the necessity of the wiretaps, as it could have uncovered the necessary evidence through ordinary investigative techniques with the help of its informants. To support this theory, defendants seek the investigative reports for the Mora and Reyna–Madrigal investigations.

Although at least some of the defendants appear to have standing to challenge the state court wiretaps,[12] it is unclear whether they are entitled to discover the investigative reports underlying the applications for those wiretaps. *See* Fed. R.Crim.P. 16(a)(2)(rules do not authorize the discovery of internal government documents made by a government agent in connection with an investigation). Accordingly, the court will request further briefing on this issue.

## III.

### CONCLUSION

Based on the foregoing, the court hereby ORDERS as follows:

1. Defendants' motion for discovery of the Orange County affidavit is GRANTED. The government shall PROVIDE to each party unredacted copies of the application and order for the Orange County wiretap if it intends to introduce evidence derived therefrom in its case against defendants.[13]

---

**12.** I note that although all defendants may have standing to challenge the federally authorized wiretap, most do not contend that they would have standing to directly challenge the underlying state-authorized wiretaps. Although the Ninth Circuit has not discussed whether a defendant who has standing to attack one wiretap may attack the validity of an underlying wiretap to which he was not a party, other circuits have uniformly held that under these circumstances, "one cannot assert indirectly what he cannot assert directly." *United States v. Scasino,* 513 F.2d 47, 51 (5th Cir.1975); *see also United States v. Williams,* 580 F.2d 578, 583 (D.C.Cir.1978); *United States v. Wright,* 524 F.2d 1100, 1102 (2d Cir.1975); *United States v. Gibson,* 500 F.2d 854, 855 (4th Cir.1974).

**13.** By virtue of proceedings in this court, an unredacted version of the Orange County application has been filed under seal, and thus, the court could simply order it unsealed. To do so, however, would appear to deprive the government of an opportunity to seek appellate review. Given the fact that other courts have reached a different conclusion, such a result seems inappropriate.

While the Ninth Circuit has not decided whether a "discovery order disposing of an asserted claim of privilege could be independently appealed under the collateral order doctrine," *United States v. Fernandez,* 231 F.3d 1240, 1245 n. 5 (9th Cir.2000), as a general rule, discovery orders are not appealable final orders. *See id* at 1245. Thus, this court recognizes that, in order to take an

2. Within fifteen (15) days of the effective date of this order, defendants shall SUBMIT further briefing concerning the authority under which this court might allow discovery of the government's investigative reports. The government may respond within seven (7) days thereafter.

IT IS SO ORDERED

appeal, the government may choose not to provide the unredacted application, suffering the exclusion of much of the evidence in this case. Assuming that such action necessitates the dismissal of the government's case, the government will then be free to appeal. *See* *id.*